# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSHUA MARCINISZYN, | : | CIVIL ACTION NO. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PERKINELMER INC., aka dba | : | |
| PERKINELMER HEALTH SCIENCES, | : | |
| INC.; ONESOURCE SCIENTIFIC | : | |
| SERVICES, aka dba ONESOURCE | : | |
| LABORATORY SERVICES; | : | |
| DAVID FRANCISCO, | : | |
| ANDREW FOSTER, | : | |
| LORENA LUPINACCI, | : | |
| KAREN HARRINGTON, and | : | |
| MONICA ROGERS, | : | |
| | : | |
| Defendants. | : | MARCH 23, 2018 |

## NOTICE OF REMOVAL[1]

TO:    THE UNITED STATES DISTRICT COURT FOR THE
       DISTRICT OF CONNECTICUT

Defendants PerkinElmer Inc.,[2] David Francisco, Andrew Foster, Lorena Lupinacci,

Karen Harrington, and Monica Rogers (collectively "Defendants") hereby notice the removal of

this action pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, premised on federal question

jurisdiction, to the United States District Court for the District of Connecticut (the "Court"), and

as grounds therefore states:

---

[1] On the same day, Plaintiff filed both this case, Docket No. UWY-CV18-5021535-S, and a
similar case against the exact same Defendants, Docket No. UWY-CV18-5021536-S.
Defendants are seeking removal of both cases and intend to file a motion to consolidate the
cases.

[2] PerkinElmer Inc. is the only proper corporate defendant.  OneSource Scientific Services is an
internal operating division within PerkinElmer Inc. and does not exist as a separate legal entity.

I.    **TIMELINESS OF REMOVAL**

      1.      On March 5, 2018, Plaintiff Joshua Marciniszyn filed a civil action against Defendants in the Superior Court of Connecticut, Judicial District of Waterbury at Waterbury, Docket No. UWY-CV18-5021535-S (the "Complaint"). Pursuant to 28 U.S.C. § 1446(a), copies of the Summons, Complaint, and Return of Service are attached hereto as Exhibit A. These are the only process, pleadings, or orders known by Defendants to have been served in this action.

      2.      The first notice Defendants received of the civil action occurred on or about February 26, 2018, when some of them were served with a copy of the Summons and Complaint referenced above.

      3.      Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within 30 days after service of process on Defendants.

II.    **VENUE**

      4.      The Superior Court of Connecticut, Judicial District of Waterbury at Waterbury, is located within the geographic coverage of the United States District Court for the District of Connecticut. 28 U.S.C. § 86. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

III.    **BASIS FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

      5.      This action is properly removable because the United States District Court has original jurisdiction in this case under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

      6.      In his Complaint, Plaintiff alleges, *inter alia*, claims under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. (*See* Compl., First Cause of Action). Plaintiff seeks

compensatory damages, attorneys' fees, punitive damages, and costs pursuant to the Sarbanes-Oxley Act. (*See* Compl., Prayer for Relief.)  This Court has original jurisdiction of this civil action because the claim pursued in Plaintiff's First Cause of Action arises under the laws of the United States.  28 U.S.C. §§ 1331, 1441(a).

7.      In his Complaint, Plaintiff alleges, *inter alia*, claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6. (*See* Compl., Second Cause of Action).   Plaintiff seeks compensatory damages, attorneys' fees, punitive damages, and costs pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act. (*See* Compl., Prayer for Relief.)  This Court has original jurisdiction of this civil action because the claim pursued in Plaintiff's Second Cause of Action arises under the laws of the United States.  28 U.S.C. §§ 1331, 1441(a).

8.      Pursuant to 28 U.S.C. § 1441(c), any and all state law statutory and common law claims alleged by Plaintiff, including but not limited to any claims under C.G.S. § 31.290A, C.G.S. § 31.51M, C.G.S. § 4-61dd, C.G.S. §§ 46a-60 *et seq.* (*See* Compl., Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action), may be removed to this Court in accordance with the Court's exercise of supplemental jurisdiction.

## IV.   <u>CONCLUSION</u>

9.      To date, Defendants have not filed a responsive pleading in Plaintiff's state court action, and no other proceedings have transpired in that action.

10.      Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have been served upon counsel for all adverse parties and upon the Clerk of the State Court.

11.      By removing this matter, Defendants do not waive or intend to waive any defense that may be available to them.

WHEREFORE, Defendants respectfully request that this Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of Connecticut to the United States District for the District of Connecticut.

DEFENDANTS,

By:/s/ Marc L. Zaken
Marc L. Zaken (CT03110)
marc.zaken@ogleetree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
281 Tresser Boulevard, Suite 602
Stamford, CT  06901
Phone: 203.969.3100
Fax: 203.969.3150

Their Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, a copy of the within and foregoing was served by first class U.S. mail to Plaintiff at the following address:

Joshua Marciniszyn
633 Willow Street
Waterbury, CT 06710

_s/_____
Marc L. Zaken

33252719.1

# EXHIBIT A

**SUMMONS - CIVIL**
JD-CV-1  Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

See other side for instructions

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☒ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 300 Grand Street, Waterbury, CT 06702 | ( 203 ) 591-3300 | March   20 2 18 |
| | | Month  Day  Year |

☒ Judicial District   ☐ G.A. Number:   At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349): **Waterbury**   Case type code *(See list on page 2)* Major: **M90**   Minor:
☐ Housing Session

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Joshua Marciniszyn 633 Willow Street, Waterbury, CT 06710 | |

Telephone number *(with area code)*: ( 203 ) 982-0050   Signature of Plaintiff *(if self-represented)*

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.   ☒ Yes  ☒ No   Email address for delivery of papers under Section 10-13 *(if agreed to)*

Number of Plaintiffs: 1   Number of Defendants: 7   ☒ Form JD-CV-2 attached for additional parties

| Parties | | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|---|
| First Plaintiff | Name: Address: | Marciniszyn, Joshua 633 Willow Street, Waterbury, CT 06710 | P-01 |
| Additional Plaintiff | Name: Address: | | P-02 |
| First Defendant | Name: Address: | PerkinElmer Inc., aka dba PerkinElmer Health Sciences Inc. 710 Bridgeport Avenue, Shelton, CT 06484 | D-01 |
| Additional Defendant | Name: Address: | OneSource Scientific Services, aka dba OneSource Laboratory Services 710 Bridgeport Avenue, Shelton, CT 06484 | D-02 |
| Additional Defendant | Name: Address: | Francisco, David 710 Bridgeport Avenue, Shelton, CT 06484 | D-03 |
| Additional Defendant | Name: Address: | Foster, Andrew 710 Bridgeport Avenue, Shelton, CT 06484 | D-04 |

**Notice to Each Defendant**

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed. *(Sign and "X" proper box)* | ☐ Commissioner of the Superior Court ☒ Assistant Clerk | Name of Person Signing at Left Ana Marie Crippa | Date signed 02/22/2018 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only
File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date 02/22/2018 | Docket Number CV18 5024535 |
|---|---|---|---|

☒ Print Form   (Page 1 of 2)   ☒ Reset Form

| | | |
|---|---|---|
| RETURN DATE : MARCH 20, 2018 | : | SUPERIOR COURT |
| | : | |
| JOSHUA MARCINISZYN | : | AT WATERBURY |
| **Plaintiff** | : | |
| | : | JUDICIAL DISTRICT AT WATERBURY |
| V. | : | |
| | : | |
| PERKINELMER INC., aka dba PERKINELMER | : | |
| HEALTH SCIENCES INC., | : | |
| ONESOURCE SCIENTIFIC SERVICES, aka dba | : | |
| ONESOURCE LABORATORY SERVICES, | : | |
| ANDREW FOSTER, DAVID FRANCISCO , | : | |
| LORENA LUPINACCI, KAREN HARRINGTON , | : | |
| and MONICA ROGERS | : | |
| **Defendants** | : | FEBRUARY 21, 2018 |

## COMPLAINT

Plaintiff, JOSHUA MARCINISZYN (hereinafter "Plaintiff" or "Marcinizyn") and files this Complaint

against the Defendants, PERKINELMER INC., aka dba PERKINELMER HEALTH SCIENCES, INC.

(hereinafter "Defendant" or "PerkinElmer"), Defendant ONESOURCE SCIENTIFIC SERVICES, aka

dba ONESOURCE LABORATORY SERVICES, (hereinafter "Defendant" or "OneSource"),

Defendant ANDREW FOSTER, ( hereinafter" Defendant" or "Foster"), DAVID FRANCISCO, (

hereinafter "Defendant" or "Francisco"), Defendant, LORENA LUPINACCI, (hereinafter

"Defendant" or "Lupinacci"), Defendant, KAREN HARRINGTON (hereinafter "Defendant" or

"Harrington"), Defendant MONICA ROGERS (hereinafter "Defendant" or "Rogers") (collectively,

"Defendants"), alleges as follows:

1

**NATURE OF CLAIMS**

1. This action seeks remedies for the wrongful termination the Plaintiff experienced while employed for the Defendants. This is an action for damages based on the following; (1)Whistleblower Retaliation Violation of Sarbanes-Oxley Act; (2)Whistleblower Retaliation in Violation of Dodd- Franklin; (3) Retaliatory Discharge in Violation of Connecticut General Statute § 31-290A; (4) Violation of Connecticut General Statute § 31.51M; (5) Wrongful Termination in Violation of Public Policy; (6) Violation of the Whistleblower Protection Act; (7) Wrongful Termination; (8) Intentional Infliction of Emotional Distress; (9) Breach of Fiduciary Duty;

**PARTIES**

2. The Plaintiff is **JOSHUA MARCINISZYN,** is a resident of the State of Connecticut who resides at 633 Willow Street, Waterbury, Connecticut of New Haven County. The Plaintiff is 47 years of age.

3. The Defendant, **PERKINELMER INC., (aka dba PERKINELMER HEALTH SCIENCES, INC.),** is a registered corporation transacting business in the State of Connecticut with its principal place of business located at 710 Bridgeport Avenue, Town of Shelton Connecticut.

4. The Defendant, **ONESOURCE SCIENTIFIC SERVICES, aka dba ONESOURCE LABORATORY SERVICES** is a registered division of PerkinElmer Inc., transacting business in the State of Connecticut with its principal place of business located at 710 Bridgeport Avenue, Town of Shelton Connecticut.

2

5.  Defendant, **ANDREW FOSTER** is a resident of the State of Massachusetts, personally conducting business at the place of business for PerkinElmer located at 710 Bridgeport Avenue, Town of Shelton Connecticut and was part of the management of Defendant PerkinElmer, who acted in the capacity as the Corporation Vice President of Human Resources and is being sued individually.

6.  Defendant, **DAVID FRANCISCO** is a resident of the State of Massachusetts, personally conducting business at the place of business for PerkinElmer located at 710 Bridgeport Avenue, Town of Shelton Connecticut and was part of the management of Defendant PerkinElmer, who acted in the capacity as the Corporation Vice President of Human Resources and is being sued individually.

7.  Defendant, **LORENA LUPINACCI,** is a resident of the State of Connecticut, personally conducting business at the place of business for PerkinElmer located at 710 Bridgeport Avenue, Town of Shelton Connecticut and was, as mentioned, Defendant PerkinElmer Senior of Human Resources Manager and is being sued individually.

8.  Defendant, **KAREN HARRINGTON** is a resident of the State of Connecticut, personally conducting business at the place of business for PerkinElmer located at 710 Bridgeport Avenue, Town of Shelton Connecticut and was, as mentioned, Defendant PerkinElmer Director of Transaction Processing and is being sued individually.

9.  Defendant, **MONICA ROGERS,** is a resident of the State of Connecticut, personally conducting business at the place of business for PerkinElmer located at 710 Bridgeport Avenue, Town of Shelton Connecticut and was, as mentioned, Defendant PerkinElmer Manager of Credit and Collections and is being sued individually.

3

**JURISDICTION AND VENUE**

10. This court having personal jurisdiction over the Plaintiff and Defendants in accordance
    with the rules of Jurisdiction pursuant to C.G.S. § 51-346.

11. Plaintiff invokes the jurisdiction of the Connecticut Superior Courts Pursuant to C.G.S.
    Sections: §46a-58 et seq., Conn. Gen. Stat. §46a-60 et seq., Conn. Gen. Stat. §46a-81c.

12. Venue is proper under C.G.S. § 51-342. Venue is proper because Plaintiff is a resident in
    this district. Venue is also proper because a substantial part of the events or omissions
    giving rise to the claim occurred in this judicial district.

13. This complaint is filed also in accordance with the rules of Venue pursuant to C.G.S.
    §§51-345; §§51-348. Jurisdiction and venue are proper in this Court because all of the
    allegations herein arose in Fairfield and New Haven Counties, Connecticut. The Plaintiff
    resides in New Haven County, Connecticut. The Defendants were and/or are residents
    of Fairfield and New Haven Counties, Connecticut or, are doing business in Fairfield and
    New Haven Counties, Connecticut and /or their principal place of business in Fairfield
    County, Connecticut, in each case, at all times relevant herein. The amount in
    controversy is within the jurisdiction of this Court.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14. The Plaintiff filled charges of Whistleblower and Discrimination on or about May 25,
    2017 with the Connecticut Commission on Human Rights and Opportunities (hereinafter
    "CHRO) under C.G.S. Sections §46a-60(a) (1); §46a-60(a) (4); §46a-81(c). The complaint
    was for and retaliation for opposing discriminatory employment practice, and whistle
    blowing.

4

15. A Release of Jurisdiction was issued by CHRO on December 5, 2017. (**Exhibit A – Release of Jurisdiction**)

16. This Complaint is filed within two years of the filing of Plaintiff's complaint with the CHRO and within ninety (90) days from the date of said Release of Jurisdiction.

17. The Statute of limitation is tolled as a direct result of the continued and ongoing Whistleblowing and harassment leading up to termination on November 17, 2016.

### BACKGROUND FACTS

18. On or about February 12, 2007, the Plaintiff was hired by the Defendant as a Credit Collection Analyst for their Connecticut office.

19. The Plaintiff has worked in Credit Collection for almost ten years.

20. At all relevant times hereinafter mentioned, the Defendant has global operations all around the world with over 100 employees in the United States Division.

21. The Defendant has a subsidiary which is OneSource. OneSource® Scientific Services provides a new set of customized scientific workflow solutions that can help laboratory directors continuously improve productivity, reduce costs and focus on their core research activities. Many times the Defendant PerkinElmer would use OneSource as a means of operating other services as well.

22. The Plaintiff s' duties as a Credit and Collection Analyst for the Defendant consisted of direct customer contact, collecting payments due, financial reporting and accounting, customer accounting and reconciliation and auditing in the United States and for non-Latin American International customers.

5

23. The Plaintiff had primarily worked as the Credit and Collection Analyst in the
Defendant's United States Division for Collections.  Plaintiff has a variety of roles which
consist of cross-departmental and divisions, role of advisor, researcher, resolution
resolver, SAP, computer processer and trainer.

24. The Plaintiff was the primary person that other employees would go to when faced with
a problem. For example in the matter regarding Horsehead Corporation,   Defendant
Harrington, on February 9, 2016 , with only a couple days remaining, asked the Plaintiff
to "do something with this".  The Plaintiff is not an attorney and the Defendant had no
"template" to follow.  This was outside the Plaintiffs scope of job duties.  The Plaintiff,
however, researched and then created a Reclamation Demand Notice Letter in order to
protect the rights of the Defendant PerkinElmer.  If the matter was not done, the
Defendant PerkinElmer would have lost their rights for a bankruptcy matter.  Horsehead
Corporation with the Account Number 465421 had a great deal at stake for the amount
of $238,414.25. (See Exhibit B – Bankruptcy Reclamation)

25. The Plaintiff would use his analytical skills to find the best possible option based on the
circumstances for a reasonable solution for the Defendant and their customers.

26. Initially when the Plaintiff first started, the Defendant recognized the Plaintiff for his
hard work and achievement along with the contribution made to the Defendants.

27. During the time of 2007 to 2016, the Plaintiff received yearly merit increases.

28. The Plaintiff to the Defendant, was very open regarding his sexual orientation. When the
Plaintiff added his domestic partner to his benefits this made the Defendant even more
aware. In 2008, the Plaintiff married his partner of 18 years. The Plaintiff changed his

6

name to his spouse's last name, in preparation of adoption, and the Defendant gave him

a hard time, initially refusing to do so. In the adoption of his son with his spouse

reaffirmed his sexual orientation.

29. The Plaintiff took time off under intermittent CTFMLA and FMLA because his son

needed him to be with him but the Defendant interpreted as an affirmation of the

Plaintiff's sexual orientation.

30. Tough collection cases, in depth and involved research, legal matters were frequently

directed to the Plaintiff with his managers knowledge and approval and often were sent

to Plaintiff by his managers. The Plaintiff had earned the reputation of being analytical

with a strict financial ethical code. These same traits were the reasons the Plaintiff was

hired and exploited by various employees of the Defendant PerkinElmer, when it

served their interest.

31. On or about February 2007, Defendant Harrington, Collection Manager and Defendant

Rogers, Dispute Resolution Analyst were Plaintiff's direct supervisors. Harrington's and

Roger's positions, roles and titles would later change, however they remained Plaintiff's

direct supervisors. Defendant Foster was the Vice President of Human Resources and

Defendant Francisco was the Vice President of Finance and Treasury, since about

February of 2008. Defendant Lupinacci had the title of Senior Resources Manager.

32. At all times relevant the Defendant PerkinElmer and all of the management including

Andrew Foster, Lorena Lupinacci, Karen Harrington and Monica Rogers were aware of

the fraudulently billing practices.

7

33. There was another incident whereby the Plaintiff emailed Defendant Harrington and

Paul LeBlanc regarding the acceptance from OneSource from Merck. Merck's policy was

violated along with the Defendants. The Defendant did $2.2M worth of work without a

Purchase Order and recognized revenue in the wrong quarter. The end result was the

Defendant intentionally and knowingly exceeded the Purchase Order issued by $3.1M.

34. In another incident, Plaintiff sent an email on or about July 2, 2013 to Paul Luchino and

Anthony Delpeche and carbon copying Defendant Harrington, concerns and objections

to fraudulently billing Merck that was causing accrual issues for Merck. Defendant

PerkinElmer for their OneSource division billed Merck $117,347.71 at Merck's for which

there was no funds remaining on the Merck Purchase Order allocated for Kenilworth NJ

location. OneSource's solution was to falsely bill these works under Purchase Order's

that had funds remaining on them, namely some under the West Point PA location,

allocated funds under a separate numbered Purchase Order and some under the

Rahway NJ location, allocated funds under a separate numbered Purchase Order. This

form of "reconciling" the billing was **habitual**, another example of many deceptive and

fraudulent practices of the Defendant PerkinElmer.

35. On or about March 12, 2008, the Plaintiff was instructed to withhold collections on a

customer who duly owed money. The Plaintiff flatly refused to comply because he

stated that he represents the shareholders and the shareholders would not approve.

The Defendants had a reckless disregard and did not care about the shareholders

interest.

8

36. On or about December 12, 2012, the Plaintiff emailed Matthew Giglietti (assistant controller) and carbon copied Defendant Harrington, that "Paul [Luchino] instructed Heather to enter $1.5M order without a valid Purchase Order. Paul feels that this will compel Merck to increase the Purchase Order amount". This was another act of deception by one of the key management figures of the Defendant.

37. On or about September 26, 2014, the OneSource department invoiced Teva Pharmaceuticals for $7,261. The Plaintiff attempted to collect payment from Teva but was unable because OneSource refused to assist in this matter. The Plaintiff in trying to protect the interest of the Defendant began authorizing the orders to be held. Both the Defendant PerkinElmer and Teva were upset. The invoice from Teva was already 277 days past due. The Plaintiff later found out by researching the matter that the invoice was billed under a non-existent Purchase Order. The Defendant PerkinElmer tried to make it look like a data entry error which it was not. Kimberley Ward of PerkinElmer stated that they thought they billed under Purchase Order 45017709, they meant to bill under Purchase Order 45016773. The Defendant never received Purchase Order 45017709 from Teva. This was billed at the end of Q3 (Quarter 3) to book revenue. The amount was fully reserved as bad debt. Rather than the Defendant looking into the actions of the OneSource team, as to why they were making up false Purchase Orders and invoicing fraudulent amounts, Randy Durnell attempted to divert the attention away from the fraud.

38. Plaintiff was disciplined for uncovering the fraud. The Defendant PerkinElmer continued to hide their fraudulent activities. The Plaintiff was continuously harassed for his efforts in discovering the fraud that they failed to do anything about.

39. On or about August 5, 2015, Plaintiff refused to agree to release radioactive product to Radmed Saglik who was a customer in Turkey. The Plaintiff emails Defendant Rogers stating "I am concerned that team members are entering orders incorrectly without having the required and necessary information. " In this case, the Plaintiff was concerned because it had to do with radioactive material. Due diligence and prudence on the Plaintiff's part should have been welcomed. The Plaintiff was later disciplined for the email. The account was removed from the Plaintiff. Defendant Harrington overrode Plaintiffs objections siding with Jack Gallagher, releasing the additional $27k in orders, that was later written off as bad debt. Defendant, having refused to heed Plaintiff's concerns, currently has pending legal action against Radmed Saglik for this unpaid debt.

40. On or about January 4, 2016, the Plaintiff sent an email to Matthew Gilieti regarding that that he step in regarding the overbilling of the Purchase Orders. The Defendant invoiced $944,379.74 over the Purchase Order amount. OneSource attempted to correct overbilling of the Purchase Order, in coordination with Merck, where three invoices, totaling, $60k, 16k and $12k all exceeded the Purchase Order. Again, it is *habitual* practice of the Defendant PerkinElmer to bill works done under a separate Purchase Order for separate work at a separate location. The problem presented itself when the Defendant was using a Rahway NJ PO to cover expenses at a West Point PA

10

location.  West Point PA is a non-taxable location.  Rahway NJ is a taxable location.  For

the Defendant's plan to work, it means that it will look like they are defrauding Merck of

services and the State of NJ tax revenue. Yet, Mr. Gilietti, as assistant controller, was

barred from remedying the problems but instead his actions were an acquiesce to the

fraudulently activities.

41.  Each year the Defendant's action of inaccurate accounting practices was becoming

more prevalent.  Plaintiff constantly challenged the Defendant's financial reporting and

accuracy and record keeping both internal and customer records.  Plaintiff challenged

both the processes and lacking processes and how, when and why the Defendant

recognized revenue.  Yet the Defendant failed to change, revise, or stop their fraudulent

activities.

42.  Plaintiff was forbidden from using the word Fraud and Fraudulent when referring to the

Defendant PerkinElmer's accounting practices.  At each time that Plaintiff would point

out these times to the management of Defendant PerkinElmer, the Plaintiff would be

disciplined.

43.   The Defendant PerkinElmer was recognizing revenue in the hundreds of thousands that

it should not have; performed hundreds of thousands of dollars of work without valid

Purchase Orders, frequently and habitually, exceeded Purchase Order authorized limits,

duplicate billed customers.

44.  The Defendant PerkinElmer continued to report their finances inaccurately and

untruthfully.  The Defendant PerkinElmer continues to intentionally and knowingly

deceive their customers with fraudulently billing and false and misleading accounting

11

reports.  Janssen (Johnson and Johnson) was a frequent target of the Defendant's false billing.

45. The Plaintiff was forbidden by his managers to put anything in writing, especially to the Executives in Waltham, Ma.   Plaintiff was told directly that he was not to email any Executive directly concerning financial impropriety, as such would result in termination.

46. The Plaintiff witnessed many occurrence of fraudulently and inaccurate accounting practices of Defendant PerkinElmer in which he was required to perform unethical acts on behalf of the Defendant PerkinElmer with the direct knowledge of Andrew Wilson, Defendant's Francisco, Harrington, and Rogers.  Plaintiff is citing only a few occurrences, but Plaintiff asserts there are dozens and dozens, if not hundreds more occurrences.

47. The Defendant had already made several attempts to cover up and destroy material evidence regarding their fraud and misrepresentation.  **(See Exhibit C – Spoliation)**

48. Exhibit C shows the meeting on August 26, 2015, a couple days after the Plaintiff filed the first CHRO complaint.  The attendees listed were the Defendants Rogers, Foster and Lupinacci.

49. In reality, Defendants Francisco and Harrington planned attended the meeting but were not listed nor disclosed, as part of the Defendant's conspiracy to conceal and hide evidence.  Two key financial people in attendance were not documented in writing as attending and the meeting was erased from the calendar as it had not existed.

12

50. On or about September 29, 2015 Plaintiff was given a written warning. Plaintiff challenged this written warning. By October 5, 2015, the August 26, 2015 meeting was removed from the calendar, in direct violation of Spoliation.

51. On or about November 3, 2015 the Defendant expunged the written warning.

52. The Defendant PerkinElmer continued to harass the Plaintiff until they finally retaliated and terminated him due, in part, to the whistleblowing.

## FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE SARBANES-OXLEY ACT

### 18 U.S.C.§ 1514 A

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 above as its sets forth in full herein.

54. At all material times Section 806 of the Sarbanes Oxley Act of 2002 was in effect and binding on Defendant. It prohibits employers such as Defendant from discharging, constructively discharging, demoting, threatening, harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating to alleged mail fraud, wire fraud, bank fraud, securities fraud, violations of SEC rules and regulations or violations of federal law relating to fraud against shareholders. In addition, an employer may not discharge or in any manner retaliate against employee because he or she filed, caused to be filed, participated in, or assisted in a proceeding relating to alleged mail fraud, wire fraud, bank fraud, securities

fraud, violations of SEC rules and regulations or violations of federal law relating to fraud against shareholders. If an employer takes retaliatory action against an employee because he or she engaged in any of these protected activities, the employee can file a complaint with the Secretary, United States Department of Labor, Occupational Safety and Health Administration ("OSHA") or other governmental agencies.

55. On October 21, 2015, The Plaintiff had emailed to Joel Goldberg, who was the Corporate Counsel for the Defendant, regarding the pending SEC complaint that had been compiled, in the process of being filed by the Plaintiff.

56. Upon information and belief Plaintiff timely filed a whistleblower complaint with SEC, and 180 days have elapsed since filing that complaint. No decision has been issued by SEC, and Plaintiff has not been the cause of any delay in the issuance of a decision. Accordingly, the Plaintiff is entitled to seek relief in Superior Court by jury trial. Moreover, no predispose arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section of SOX.

57. Defendant harassed, threatened, discharged and retaliated against Plaintiff, and disclosed his entity as a whistleblower, after Plaintiff made oral and written complaints regarding what he reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules and regulations. Plaintiff made these complaints to his employer, by and through its agents and employees, as well as to the SEC.

58. Plaintiff is informed and believes, and thereon alleges that because of his making complaints regarding Defendant's illegal conduct and/or conduct Plaintiff reasonably believed to be illegal; Plaintiff was discharged from his employment and/or otherwise

14

discriminated and retaliated against by Defendant after he had made the aforesaid complaints about illegal conduct.

59. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

60. Plaintiff has further suffered and will continue to suffer a loss or earnings and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

61. Defendant's actions constituted a willful violation of the abovementioned federal and state laws and regulations. As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees in seeking to compel Defendant to fully perform its obligations under state and federal law, in amounts according to proof at time of trial.

62. The conduct of the Defendant described hereinabove was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

63. Defendant committed the acts alleged hereinabove by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive and exemplary damages in amounts according to proof at the time of trial, to the full extent allowable by law, in addition to any other remedies and damages allowable by law.

15

64. As a proximate result of the actions and conduct described hereinabove, which constitute violations of Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), Plaintiff has been damaged in an amount according to proof at the time of trial, and seeks make-whole relief, civil penalties and attorney's fees against Defendant pursuant to SOX.

65. Wherefore Plaintiff prays for relief as stated in pertinent parts hereinafter.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of the Dodd-Frank Wall Street Reform and**
**Consumer Protection Act of 2010-15 U.S.C. § 78u-6(h))**

66. Plaintiff repeats and realleges the allegation set forth in the paragraphs 1 to 65 above as it sets forth in full herein.

67. At all times material hereto, Section 78u-6 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") was in effect and binding on Defendant. It permits individuals who allege discharge or other discrimination to bring an action in Superior Court.

68. Dodd-Frank prohibits employers from discharging, demoting, suspending, threatening, harassing, directly or indirectly, or in any other manner discriminating against whistleblowers in the terms and conditions of employment because of any lawful act done by the whistleblower in providing information to the SEC, in initiating, testifying in, or assisting in any investigation or judicial or administrative act of the SEC based upon or related to such information, or in making disclosures that are required or protected under SOX, Dodd-Frank, and any other law, rule or regulation subject to the jurisdiction of the SEC.

16

69. Plaintiff is a whistleblower within the meaning of Dodd-Frank, as evidenced by his conduct described in the Paragraphs above.

70. Defendant harassed, threatened, discharged and retaliated against Plaintiff, and took other adverse actions against Plaintiff, including disclosing his entity as a whistleblower, after Plaintiff made oral and written complaints regarding what he reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules and regulations. Plaintiff made these complaints to his employer, by and through its agents and employees, as well as to the SEC.

71. Plaintiff is informed and believes, and thereon alleges that because of his making complaints regarding Defendant's illegal conduct and/or conduct Plaintiff reasonably believed to be illegal; Plaintiff was discharged from his employment and/or otherwise discriminated and retaliated against by Defendant after he had made the aforesaid disclosures and complaints about illegal conduct.

72. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

73. Plaintiff has further suffered and will continue to suffer a loss or earnings and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

74. Defendant's actions constituted a willful violation of the above mentioned federal laws and regulations. As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and

expenses and attorney's fees in seeking to compel Defendant to fully perform its

obligations under state and federal law, in amounts according to proof at time of trial.

75. The conduct of Defendant described hereinabove was outrageous and was executed

with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights,

and further, with the intent, design and purpose of injuring Plaintiff.

76. As a proximate result of the actions and conduct described hereinabove, which

constitute violations of Dodd-Frank, Plaintiff has been damaged in an amount according

to proof at the time of trial, and seeks all relief allowable by law including without

limitation double back pay, injunctive and declaratory relief, make-whole relief, civil

penalties, litigation costs, expert witness fees and attorney's fees against Defendant

pursuant to Dodd-Frank.

77. Wherefore Plaintiff prays for relief as stated in pertinent part hereinafter.

## THIRD CAUSE OF ACTION

### Retaliatory Discharge in Violation of Connecticut General Statute §31.290A

78. Plaintiff repeats and realleges the allegations set forth in the paragraphs 1 through 77

above as it is set forth in full herein.

79. At all relevant times, Plaintiff was an employee and Defendant PerkinElmer was his

employer within the meaning set forth in the Connecticut General Statue § 31.290A.

80. At all times material to this Complaint, Connecticut General Statue § 31.290A was in

effect and binding on Defendant. This section requires Defendant to refrain from

retaliating against an employee for refusing to participate in an activity that he

18

reasonably believes would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

81. Plaintiff had a reasonable belief that Defendant was violating state and federal laws, and reported those violations to Defendant's management as well as to law enforcement agencies and regulators, as Defendant well knew, and as alleged hereinabove.

82. Defendant retaliated against Plaintiff for his whistleblowing, by harassing, threatening, and terminating him, among other things, all in violation of Connecticut General Statue § 31.290A.

83. As a direct and proximate result of such retaliation, Plaintiff has been damaged in a sum according to proof.

84. The actions of the Defendant and its agent were willful, intentional, and a deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

85. As a direct and proximate results of Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earnings capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of his choice.

**FOURTH CAUSE OF ACTION**
**Violation of Connecticut General Statute 31.51M**

86. Plaintiff repeats and realleges the allegation set forth in the paragraphs 1 through 85 above as it set forth if full therein.

19

87. At all relevant times, Plaintiff was an employee and Defendant PerkinElmer was his employer within the meaning set forth in the Connecticut General Statue § 31.51M.

88. At all times material to this Complaint, Connecticut General Statue § 31.51M was in effect and binding on Defendant. This section protects employees who disclose employer's illegal activities or unethical practices or reports.

89. The Connecticut General Statue 31.51M states that "No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body .

90. Defendants terminated the Plaintiff in part because he made disclosures regarding his working conditions as detailed herein. **(See Exhibit D – US Dept of Labor Complaint)**

91. As a direct and foreseeable result of the aforesaid acts of said Defendant, Plaintiff has loss and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest in accordance with the law.

92. As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

93. The above described acts of Defendants, by and through their managing agents, officers or directors, were engaged in with a deliberate, cold, callous, fraudulent and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of

Plaintiff and his rights. Such acts were despicable and constitute malice, fraud and/or oppression. The Plaintiff is requesting an assessment of punitive damages against Defendants, in an amount to be proven at the time of trial.

### FIFTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

94. Plaintiff repeats and realleges the allegation set forth in the paragraphs 1 through 93. above as it set forth in full therein.

95. At all times material hereto, Section 806 of the Sarbanes Oxley Act of 2002 was in effect and binding on Defendant. This law prohibits employers such as Defendant from discharging, constructively discharging, demoting, threatening, harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating to alleged mail fraud, wire fraud, bank fraud, securities fraud, violations of SEC rules and regulations or violations of federal law relating to fraud against shareholders. In addition, an employer may not discharge or in any manner retaliate against employee because he or she filed, caused to be filed, participated in, or assisted in a proceeding relating to alleged mail fraud, wire fraud, bank fraud, securities fraud, violations of SEC rules and regulations or violations of federal law relating to fraud against shareholders.

21

96. At all times material hereto, Section 78u-6 of the Dodd-Frank Wall Street Reform and
Consumer Protection Act of 2010 ("Dodd-Frank") was in effect and binding on
Defendant. Dodd-Frank prohibits employers from discharging, demoting, suspending,
threatening, harassing, directly or indirectly, or in any other manner discriminating
against whistleblowers in the terms and conditions of employment because of any
lawful act done by the whistleblower in providing information to the SEC, in initiating,
testifying in, or assisting in any investigation or judicial or administrative act of the SEC
based upon or related to such information, or in making disclosures that are required or
protected under SOX, Dodd-Frank, and any other law, rule or regulation subject to the
jurisdiction of the SEC.

97. At all times mentioned in this complaint, Connecticut General Statue § 31.290A.
was in full force and effect and was binding on Defendant. This law requires Defendant
to refrain, among other things, from retaliating against employees who refuse to
participate in or condone conduct they reasonably believe to violate state or federal
law.

98. Title 18 USC § 1343 defines the crime of wire fraud under federal law, and provides in
pertinent part: "Whoever, having devised or intending to devise any scheme or artifice
to defraud, or for obtaining money.... by means of false or fraudulent pretenses,
representations, or promises, transmits or causes to be transmitted by means of wire,
radio, or television communication in interstate or foreign commerce, any writings,
signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice,
shall be fined under this title or imprisoned not more than 20 years, or both." Plaintiff

22

zealously and tirelessly tried to stop Defendant from stealing from customers like Janssen (Johnson & Johnson).

99. Defendant PerkinElmer engaged daily in the crime of wire fraud by their day to day transactions which included fraudulent billing through programs such as (but not limited to), Ariba and DCI and, receiving funds from clients by check, credit cards, wires and ACH. The Defendant would conspire, manipulate, change, double bill and inflate the customer's account in a fraudulent manner in order to maintain their prominent status of deception and misrepresentation.

100. Title 18 USC § 1341 defines the crime of mail fraud under federal law, and provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money.... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." Plaintiff zealously and tirelessly tried to protect Merck shareholders from fraudulent billing and accomplice like and collusion actions between Merck and the Defendant management, as well as trying to protect Janssen's (Johnson and Johnson's) shareholders from same, and other customers, in his and other's portfolio's.

23

101.    The fundamental public policies of the State of Connecticut as set forth in

Connecticut Fair Employment Practice Act , Conn. Gen. Stat. §46a-60 et seq. & §46a-81a

et seq.  which mandate that employees be free from unlawful discrimination,

harassment and retaliation.

102.    Each of the aforesaid laws is a fundamental policy of the Commonwealth of the

State of Connecticut.

103.    Plaintiff believes and thereon alleges that his whistleblowing, refusing to

condone illegal activity, and engaging in protected activity, was or were a motivating

factor in Defendant's conduct as alleged hereinabove, including terminating Plaintiff.

104.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has

sustained and continues to sustain physical injuries, pain and suffering, and extreme and

severe mental anguish and emotional distress; and Plaintiff has suffered and continued

to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled

to general and compensatory damages in amounts to be proven at trial.

105.    Defendant's conduct as described above was willful, despicable, knowing, and

intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in

an amount according to proof.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE WHISTLEBLOWERS' PROTECTION ACT

106.    The Plaintiff repeats and realleges the allegations set forth in paragraphs 1

through 105 above as it is set forth in full herein.

24

107.    The Plaintiff was an employee working for the Defendant PerkinElmer who is an employer, covered by and within the meaning of Connecticut Whistleblower Protection Act., Connecticut Statute §31-51m & 4-61dd.

108.    Defendant was a Federal Contractor, as admitted within Exhibit E.  **(See Exhibit E – Federal Government Contractor)**

109.    Plaintiff reported or was about to report violations or suspected violation of State and Federal laws, regulation, and rules governing the independence of the corporate form and breach of fiduciary duty/conflict of interest to the ABA, the State Attorney General and other law enforcement agencies.

110.    Plaintiff reported or was about to report violations or suspected violation of State and Federal laws, regulations, and rules governing the taxation, to the internal Revenue Service.

111.    Plaintiff reported or was about to report violation or suspected violation of State and Federal laws, regulations, and rules forbidding obstruction of justice and/or destruction of evidence of criminal activity to U. S. Attorney, the State Police and the State Attorney General.  Plaintiff received release of jurisdiction from a prior CHRO complaint and was just about to file in Connecticut Superior court revealing the aforementioned crimes, frauds and misrepresentation when he was terminated.

112.    Defendants, by their agent(s), were aware the Plaintiff had reported and was about to report other violations or suspected violations of law to a public body.

113.    The Defendant PerkinElmer committed fraudulently and inaccurate accounting practices in which they mandated the Plaintiff to perform unethical acts on behalf of the

25

Defendant PerkinElmer with the direct knowledge of Andrew Wilson, Defendants

Francisco, Harrington, and Rogers.

114.     The Defendant PerkinElmer has reason to believe that by terminating the

Plaintiff, this would cut off his access to pertinent, relevant and damaging evidence.

115.     The Defendant PerkinElmer terminated the Plaintiff, in an attempt to prevent

fraudulent and illegal financial reporting and recording conduct from being disclosed to

the Securities and Exchange Commission, Moody's, Fitch Group and Standard and

Poor's, PerkinElmer shareholders and investors, current lending institutions, purchasers

of current and past divisions of PerkinElmer, The Dept. of Justice, various State's with a

vested interested in the internal dealings of the Defendant, and various State Revenue

Services, to name most, which would open multiple and cross state and national

investigations.

116.     Defendants' actions in retaliating against Plaintiff and terminated his

employment were intentional and disregard for the rights and sensibilities of Plaintiff.

117.     The retaliatory conduct of Defendants and their agents is a violation of

Connecticut Whistleblowers Protection Law Sec. 31-51m.

118.     As a direct and proximate result of the violation of Plaintiffs right as alleged, each

Plaintiff has suffered irreparable harm, injuries, and damages, including but not limited

to loss of earnings and earning capacity, past and future lost earnings, the value of

fringe and pension benefits, and the Plaintiff has sustained mental and emotional

distress, embarrassment, humiliation, anxiety about the future, damage to his good

name and reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of his choice.

## SEVENTH CAUSE OF ACTION
## WRONGFUL TERMINATION

119.     The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 118 above as it set forth in full herein.

120.     At all times during his employment with the Defendant PerkinElmer, the Plaintiff performed his duties with the utmost diligence and competence.

121.     Plaintiff is informed and believes and thereon alleges that Defendants' decision to harass and discriminate against him, as alleged herein, was terminated because of the information regarding whistleblowing to other agencies. Plaintiff is further informed and believes and thereon alleges that any other reasons proffered by Defendant were and are perpetual in nature.  Defendant intentionally created the aforementioned discrimination, harassment, and retaliation, thereby creating intolerable working conditions for the Plaintiff.

122.     By reason of the aforementioned conduct and circumstances, Defendant and each of them, violated the fundamental public policies of the State of Connecticut as set forth in Connecticut Fair Employment Practice Act , Conn. Gen. Stat. §46a-60 et seq. & §46a-81a et seq. which mandate that employees be free from unlawful discrimination, harassment and retaliation. As a further result of the aforesaid conduct of Defendant, and each of them, Plaintiff has been directly and legally caused to suffer the harm and damages alleged therein.

27

123.      Plaintiff is informed and believes and thereon alleges that Defendants, and each

of them, committed the acts herein maliciously, fraudulently, and oppressively, with the

wrongful intention of injuring Plaintiff and acted with an improper and evil motive

amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts

taken towards Plaintiff were carried out by managerial employees acting in a despicable,

deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff.

124.      Plaintiff is entitled to recover punitive damages from the individual Defendants

in an amount according to proof.

### EIGHTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125.      The Plaintiff repeats and realleges the allegation set forth in paragraphs 1

through 124 above as it set forth in full herein.

126.      Defendant has caused intentional infliction of emotional distress to the Plaintiff.

127.      Defendant engaged in outrageous conduct towards Plaintiff with the intention to

cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe

emotional distress, and with wanton and reckless disregard for the injurious result to

Plaintiff, as set forth hereinabove. The conduct set forth hereinabove was extreme and

outrageous and an abuse of the authority and position of Defendant. The above-

described conduct was intended to cause severe emotional distress, or was done in

conscious disregard of the probability of causing such distress. This conduct exceeded

28

the inherent risks of employment and was not the sort of conduct normally expected

from an employer.

128.     The Plaintiff was able to and did perform the essential functions of his position.

The Plaintiff believes and alleges that the Defendant intended to and did cause the

Plaintiff to suffer from emotional distress because of his actions regarding the

whistleblowing against the Defendant.

129.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has

sustained and continues to sustain pain and suffering, extreme and severe mental

anguish and emotional distress; Plaintiff has incurred and will continue to incur medical

expenses for treatment, and for incidental medical expenses; and Plaintiff has suffered

and continues to suffer a loss of earnings and other employment benefits. Plaintiff is

thereby entitled to general and compensatory damages in amounts to be proven at trial.

130.     As results of these acts, the Plaintiff suffered from stress and anxiety which

negatively impacted his physical and emotional condition.

131.     Through the Defendant, and each of their outrageous and unprivileged conduct

as described herein and above, acted with the intent to cause, or with a reckless

disregard for the probability of causing the Plaintiff to suffer humiliation, isolation,

mental anguish, loss of job opportunities and reputation, and severe physical  and

emotional distress.

132.     To the extent that the Defendant perpetrated retaliatory conduct, the Defendant

authorized and ratified the conduct with knowledge that the Plaintiff's emotional and

29

physical distress would thereby increase, and with a wanton and reckless disregard of the deleterious consequences.

133.    The Defendant actions influenced, persuaded, and encouraged, offensive and retaliatory actions against the Plaintiff which caused him emotional distress.

134.    As a direct and proximate results of the conduct of the Defendant and each of their acts, the Plaintiff suffered and continues to suffer general, compensatory, and special damages including lost wages and benefits, future loss of wages and benefits, loss of career opportunities, prejudgment interest, consequential and incidental damages, plus tort damages including humiliation, isolation, emotional distress an physical injuries in an amount unknown, but according to proof at trial.

135.    Based on the Defendant course of conduct, which was willful, malicious, knowing, intentional, and in conscious disregard of the Plaintiff's rights and safety, the Plaintiff seeks an award of punitive and exemplary damages in an amount according to the proof at trial to punish the Defendant, and to deter similar conduct in the future.

### NINTH CAUSE OF ACTION

### BREACH OF FIDICUARY DUTY

136.    The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 135 above as it set forth in full herein.

137.    The Defendants acted in bad faith by habitually repeating the same errors, omissions, and misrepresentations. Once known, repeating the same act is intentional and willful.

30

138.     The Defendant habitually, knowingly, falsely, billed customers for work not

preformed.  This practice falsely recognized revenue that fed into and / or was, directly

or indirectly reported and / or calculated into the overall profitability of the company

that was then shared with the shareholders, as factual information.  Plaintiff continually

raised this issue with management and was disciplined and threatened discipline by

management for raising the issue, while management failed to and / or refused to,

correct the issues causing the problems.

139.     The Defendant habitually, knowingly, performed work that was not authorized

and then billed for said work.  This practice falsely recognized revenue that fed into and

/ or was, directly or indirectly reported and / or calculated into the overall profitability

of the company that was then shared with the shareholders, as factual information.

Plaintiff continually raised this issue with management and was disciplined and

threatened discipline by management for raising the issue, while management failed to

and / or refused to, correct the issues causing the problems.

140.     The Defendant habitually, knowingly, falsely, billed customers for work that was

previously billed.  This practice falsely recognized revenue that fed into and / or was,

directly or indirectly reported and / or calculated into the overall profitability of the

company that was then shared with the shareholders, as factual information.  Plaintiff

continually raised this issue with management and was disciplined and threatened

discipline by management for raising the issue, while management failed to and / or

refused to, correct the issues causing the problems.

31

141.    The Defendant habitually, knowingly, falsely, billed customers for work that was

previously paid. In other words, they duplicate and triplicate billed for work that was

preformed and paid for by the customer. This practice falsely recognized revenue that

fed into and / or was, directly or indirectly reported and / or calculated into the overall

profitability of the company that was then shared with the shareholders, as factual

information. Plaintiff continually raised this issue with management and was disciplined

and threatened discipline by management for raising the issue, while management

failed to and / or refused to, correct the issues causing the problems.

142.    The Defendant habitually, knowingly, failed to apply payments to customers'

accounts in a timely fashion and even failed to do so once it was brought to their

attention. This practice falsely reflected open, past due receivables on the customers'

accounts. This practice falsely calculated into the DSO, thereby falsely reporting DSO,

no matter to what degree of severity. This practice falsely recognized aging of the

receivables, that fed into and / or was, directly or indirectly reported and / or calculated

into the overall profitability of the company that was then shared with the shareholders,

as factual information. Plaintiff continually raised this issue with management and was

disciplined and threatened discipline by management for raising the issue, while

management failed to and / or refused to, correct the issues causing the problems.

143.    The Defendant habitually, knowingly, falsely, taxed customers where tax was not

due and taxed customers where the Defendant had no legal authority to do so. This

practice falsely recognized tax liabilities and tax revenue that fed into and / or was,

directly or indirectly reported and / or calculated into the overall profitability of the

32

company that was then shared with the shareholders, as factual information. Plaintiff

continually raised this issue with management and was disciplined and threatened

discipline by management for raising the issue, while management failed to and / or

refused to, correct the issues causing the problems.

144.     The Defendant directly told the Plaintiff to do as he was told and not argue with

management or he will suffer disciplinary action.

145.     These habitual problems were numerous, invasive and was not just extremely

inefficient and a hindrance to collections and a nuisance to customers, but was fiscally

irresponsible and knowingly fraudulent.

146.     The Defendants breached their obligation to place the welfare and best interests

of the shareholders above their own personal interests and agendas.  The Defendants

disciplined and threatened discipline of the Plaintiff for raising these issues.

147.     The Defendants applied poor business judgment, acted in bad faith, and failed to

promote the best interests of the corporation by not heeding the issues raised by the

Plaintiff and continually trying to silence the Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court GRANT

judgment as follows:

1.   Reinstatement of his job, with reinstatement of his full benefits and back pay.

2.   General damages for mental and emotional suffering caused by Defendants

     misconduct.

33

3. Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

4. Special damages and/or liquated damages for lost wages and benefits and prejudgment interest thereon;

5. Trial by jury to all issues;

6. Prejudgment interest at the rate allowed by law:

7. All other relief to which he may be entitled.

Respectfully submitted the 21th day of February 2018

Joshua Marciniszyn
Pro Se Plaintiff
633 Willow Street
Waterbury, Connecticut

34

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2   Rev. 9-12

STATE OF CONNECTICUT
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**Marciniszyn, Joshua**

First named Defendant *(Last, First, Middle Initial)*
**PerkinElmer Inc.**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| Lupinacci, Lorena | 710 Bridgeport Avenue, Shelton, CT 06484 | 05 |
| Harrington, Karen | 710 Bridgeport Avenue, Shelton, CT 06484 | 06 |
| Rogers, Monica | 710 Bridgeport Avenue, Shelton, CT 06484 | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |
| | | 14 |

FOR COURT USE ONLY – File Date

Docket number

**CIVIL SUMMONS-Continuation**

Print Form          Reset Form

Bill Fry
State Marshal
PO Box 765
Monroe, CT 06468
(203) 816-2216

## RETURN OF SERVICE

STATE OF CONNECTICUT

SS: SHELTON

COUNTY OF FAIRFIELD

IN THE MATTER CONCERNING:

MARCINISZYN, JOSHUA
VS.

PERKINELMER INC. A/K/A PERKINELMER HEALTH SCIENCES INC ., ONESOURCE SCIENTIFIC SERVICES, A/K/A ONESOURCE LABORATORY SERVICES, FARNCISCO , DAVID; FOSTER, ANDREW, LUPINACCI, LORENA; HARINGTON, KAREN; ROGERS, MONICA

DATE: 02/26/18

Then and there, by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with and in the hands of NICHOLAS DELLOLIO JR. , Director of facilities for Perkin Elmer authorized to accept service for defndant, ONESOURCE SCIENTIFIC SERVICE A/K/ A ONESOURCE LABORATORY SERVICES at 710 BRIDGEPORT AVENUE, SHELTON, CT 06484, with my doings hereon endorsed.

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with and in the hands of defendant, LORINA LUPINACCI at 710 BRIDGEPORT AVENUE, SHELTON, CT 06484, with my doings hereon endorsed.

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with and in the hands of defendant, KAREN HARRINGTON at 710 BRIDGEPORT AVENUE, SHELTON, CT 06484, with my doings hereon endorsed.

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with and in the hands of defendant, MONICA ROGERS at 710 BRIDGEPORT AVENUE, SHELTON, CT 06484, with my doings hereon endorsed.

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with CONNECTICUT SECRETARY OF STATE agent for defendant, ANDREW T. FOSTER pursuant CGS 52-59b at 30 TRINITY STREET HARTFORD, CT 06106, with my doings hereon endorsed

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with CONNECTICUT SECRETARY OF STATE agent for defendant, DAVID C FRANCISCO pursuant CGS 52-59b at 30 TRINITY STREET HARTFORD, CT 06106, with my doings hereon endorsed

Then and there on 02/28/18 by virtue hereof and at the direction of the plaintiff, I made service of the within and foregoing original Writ, Summons, Complaint and Amount in Demand by leaving a True and Attest Copy with CT CORPORATION, agent for service for the within named defendant, PERKINELMER INC. A/K/A dba PERKINELMER HEALTH SCIENCES INC. at 67 BURNSIDE AVENUE, EAST HARTFORD CT ,with my doings hereon endorsed.

Then and there on 02/28/18 and by virtue hereof and at the direction of the plaintiff, I made due and legal service of the within named defendant, ANDREW T. FOSTERby depositing at the post office via certified mail, postage paid, return receipt requested and bearing receipt number, 7016 2710 0000 0077 0198 a true and attest copy of the within and foregoing original Writ, Summons, Complaint and Amount In Demand addressed to the within named defendant, ANDREW T. FOSTER at 39 ELMWOOD STREET, SOMERVILLE, MA. 02144 with my doings hereon endorsed.

Then and there on 02/28/18 and by virtue hereof and at the direction of the plaintiff, I made due and legal service of the within named defendant, DAVID C. FRANCISCO, by depositing at the post office via certified mail, postage paid, return receipt requested and bearing receipt number, 7016 2710 0000 0077 0167 a true and attest copy of the within and foregoing original Writ, Summons, Complaint and Amount In Demand addressed to the within named defendant, DAVID C. FRANCISCO at 214 NEWTOWN ROAD, ACTON, MA. 01720 with my doings hereon endorsed.

Attest _____
W. Fry State Marshal

| | |
|---|---|
| Service | $ 300.00 |
| Filing Fee | $ 100.00 |
| Certified Mail | $ 16.92 |
| Travel | $ 78.44 |
| Pages | $ 324.00 |
| Endorsements | $ .7.20 |
| | $ 826.56 |